**WO**

JDN

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Oscar Contreras Aguilar,

                   Plaintiff,

vs.

Colette S. Peters, et al.,

                 Defendants.

No. CV-23-00268-TUC-SHR

**ORDER**

Plaintiff Oscar Contreras Aguilar,[1] who is confined in the United States Penitentiary (USP) Allenwood in White Deer, Pennsylvania, brought this pro se civil rights action under 28 U.S.C. § 1331 against the United States. (Doc. 1.) Before the Court are the following Motions:

     • Plaintiff's Motion to Reinstate Federal Tort Claims Act (FTCA) Claim (Doc. 83);

     • Plaintiff's Motion to Unseal All Sealed Psychology Records and Other Sealed Documents (Doc. 84);

     • Plaintiff's Second Motion for Preliminary Injunction (Doc. 85);

     • Plaintiff's Request for Entry of Default (Doc. 89);

     • Defendant's Motion to Dismiss as Moot or in the alternative Motion for Summary Judgment based on the failure to exhaust administrative remedies (Doc. 90);

---

[1] Plaintiff is a transgender female and uses female pronouns. (Doc. 1 ¶ 6.)

• Plaintiff's Motion to Strike Defendant's Motion to Dismiss or for Summary Judgment (Doc. 102);

• Plaintiff's Motion for Leave to File Amended Complaint (Doc. 120);

• Plaintiff's Sealed Motion for Leave to File Recently Discovered Evidence/Documents (Doc. 124);

• Plaintiff's Sealed Motion to Compel or Strike or for Appointment of Counsel (Doc. 126); and

• Plaintiff's Motion to Unseal Documents 122, 124, and 126 (Doc. 129).

The Court will deny all Motions.

## I.    Background

In her Complaint, Plaintiff alleges that, since entering BOP custody in July 2021, she has been held in the Bureau of Prison's (BOP's) Special Housing Units (SHUs) under either "Administrative" or "Disciplinary" segregation status for 455 days at various facilities, including at Federal Correctional Complex Petersburg, USP Lee, USP Atlanta, Federal Detention Center Philadelphia, USP Lewisburg, Metropolitan Detention Center Brooklyn, and USP Tucson.  (Doc. 1 ¶ 33.)  Plaintiff states she has been diagnosed with numerous mental illnesses, including adjustment disorder with depressed mood and anxiety, complex post-traumatic stress disorder, and "rule-out malingering."  (*Id.* ¶ 35.) Plaintiff alleges confinement in these SHUs means near-constant isolation in small cells, with little to no access to out-of-cell recreation or contact with other people.  (*Id.* ¶¶ 17– 18.)  Plaintiff explains when a prisoner is given recreation time out of their cell, it consists of one hour in an 8' x 8' "stripped cage."  (*Id.* ¶ 19.)  According to Plaintiff, although prisoners are supposed to receive five hours of out-of-cell recreation per week, this rarely happens as officers frequently employ various schemes to prevent opportunities for recreation and the SHUs are often on lockdown.  (*Id.* ¶¶ 21–24.)  Plaintiff alleges prisoners housed in SHUs have no access to TVs, MP3 players, tablets, commissary, or rehabilitative or educational programs, and they receive one 15-minute phone call per month when the institution is not on lockdown.  (*Id.* ¶ 25.)

Plaintiff alleges the conditions of confinement in SHUs exacerbate her mental illnesses, causing her to suffer auditory hallucinations, constant anxiety attacks, severe depression, panic attacks, insomnia, and suicidal thoughts and ideation. (*Id.* ¶¶ 36–38, 49.) Plaintiff alleges she has attempted suicide multiple times while housed in SHUs and has suffered serious physical injury and emotional distress as a result. (*Id.* ¶¶ 38, 49.) Despite this history, Plaintiff alleges she continues to be held in the SHU without periodic status reviews to determine whether her confinement in the SHU is appropriate, and Defendants manipulate BOP policy to prolong Plaintiff's confinement in the SHU. (*Id.* ¶¶ 27–29, 51–52.)

Plaintiff alleges on May 16, 2023, while housed in the SHU at USP Tucson, she was suffering from constant anxiety attacks and severe depression, which led to suicidal thoughts and ideation. (*Id.* ¶ 54.) Plaintiff alleges she reported her condition to Officers Hernandez, Fragoso, and Valtierra multiple times during their rounds. (*Id.*) The officers took no action, and, hours later, Plaintiff attempted suicide. (*Id.*) Plaintiff states her cellmate intervened, stopped her from hanging herself, and pushed the cell's emergency button. (*Id.*) Officers did not respond to the emergency button call. (*Id.*) Plaintiff alleges after numerous other prisoners started kicking their cell doors and yelling for help, Officers Hernandez and Fragoso arrived at Plaintiff's cell door. (*Id.*) According to Plaintiff, instead of seeking medical help for her, the Officers opened the food slot and sprayed Plaintiff and her cellmate with excessive amounts of chemical agents. (*Id.*) Plaintiff alleges this incident has caused her to suffer severe emotional injury and distress, psychological trauma, and fear. (*Id.*)

Plaintiff asserts three counts for relief: a request for habeas relief under 28 U.S.C. § 2241 (Count One); claims under *Bivens* alleging Eighth Amendment violations against individual BOP Defendants (Count Two); and an FTCA claim against Defendant United States based on negligent acts of BOP employees on May 16, 2023. (*Id.* ¶¶ 61–69.) On screening under 28 U.S.C. § 1915(a), the Court dismissed Count One. (Doc. 15 at 12.) The Court also dismissed Count Two to the extent Plaintiff sought relief under *Bivens* but

1    otherwise construed the claim as one for injunctive relief under 28 U.S.C. § 1331.  (*Id.*)

2    The Court determined Plaintiff had sufficiently stated a claim under § 1331 (within Count

3    Two) and the FTCA (Count Three) against Defendant United States and directed

4    Defendant to answer these Counts.  (*Id.*)  The individual Defendants were dismissed.  (*Id.*)

5        In August 2023, shortly after the Court issued its Screening Order, Plaintiff moved

6    to voluntarily dismiss the FTCA claim in Count Two.  (Doc. 21.)  The Court granted

7    Plaintiff's Motion and dismissed Count Two without prejudice.  (Doc. 81 at 22.)

8    Accordingly, the only remaining claim is Plaintiff's claim under § 1331 for injunctive relief

9    to the extent she seeks to enjoin her continued detention in the SHU.  (*See id.* at 1 n.3.)

10   **II.    Plaintiff's Motion to Reinstate FTCA Claim (Doc. 83)**

11       **A.    Plaintiff's Motion**

12       On March 19, 2024, Plaintiff filed her Motion to Reinstate FTCA Claim.  (Doc. 83.)

13   Plaintiff requests reinstatement of the FTCA claim because she has now "properly

14   exhausted her administrative remedies."  (*Id.* at 2.)  Plaintiff asserts at the time she filed

15   her Complaint in June 2023, she had been housed in the USP Tucson SHU and did not

16   have access to the law library for over 2 months due to a lockdown.  (*Id.* at 2 n.1.)  In July

17   2023, after filing the Complaint, Plaintiff was able to access the library and learned she

18   could file a handwritten administrative FTCA claim without a SF-95 form.  (*Id.*)  Plaintiff

19   immediately voluntarily dismissed without prejudice her FTCA claim and proceeded to

20   file a handwritten administrative FTCA claim with the BOP in August 2023.  (*Id.*)  Plaintiff

21   received no response to her administrative claim within the six-month timeframe for

22   Defendant to respond.  (*Id.*)

23       Defendant did not respond to Plaintiff's Motion to Reinstate FTCA Claim.   In

24   August 2024, well after the time for Defendant to respond to Plaintiff's Motion had passed,

25   Plaintiff filed a Notice of Unopposed Motion Ripe for Disposition.  (Doc. 97.)  Plaintiff

26   stated that, because Defendant had not responded to—and thus did not oppose—her Motion

27   to Reinstate FTCA Claim, the Motion should be granted.  (*Id.*)

28       Defendant filed a Response to Plaintiff's Notice, asserting Plaintiff's Motion to

- 4 -

1   Reinstate FTCA Claim had been docketed as a motion for reconsideration, and the Court

2   had not ordered Defendant to file a response.  (Doc. 98.)  Defendant contends the motion

3   for reconsideration should be denied as untimely.  (*Id.*)

4          **B.    Discussion**

5          Plaintiff's Motion to Reinstate FTCA Claim is construed as a motion to amend

6   under Federal Rule of Civil Procedure 15.  *See Henderson v. Montgomery*, No. 2:18-CV-

7   05390-MWF-KES, 2020 WL 6493765, at *12 (C.D. Cal. Oct. 13, 2020) (construing the

8   petitioner's motion to reinstate two grounds as a motion to amend the petition); *Wool v. Vt.*

9   *Dep't of Corrs.*, 2012 WL 1435704, at *2 (D. Vt. April 6, 2012) (construing the plaintiff's

10  motion to reinstate previously dismissed defendant as a motion to amend under Rule 15).

11         Federal Rule of Civil Procedure 15(a)(2) provides courts "should freely give leave

12  [to amend] when justice so requires."  Although Rule 15(a) is very liberal, courts "need not

13  grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought

14  in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen*

15  *Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

16         As Plaintiff points out, to date, Defendant has not filed an Answer.  (Doc. 83 at 1.)

17  Thus, there is no apparent prejudice to Defendant in reinstating Plaintiff's FTCA claim,

18  and there is no undue delay in the litigation.  Nor is there any basis for finding the

19  amendment is sought in bad faith.

20         Further, Defendant did not oppose the Motion to Reinstate.  Defendant maintains it

21  was not required to respond to the Motion because it is a motion for reconsideration.  (Doc.

22  98.)  Plaintiff's Motion to Reinstate FTCA Claim was docketed by the Clerk's Office as

23  "MOTION for Reconsideration re: <u>15</u> Order (Reinstatement of Plaintiff's FTCA Claim)."

24  (Doc. 83.)  The designation of this Motion as a motion for reconsideration was clearly in

25  error.  Indeed, the Order at Doc. 15 was the Screening Order, which found Plaintiff had

26  stated an FTCA claim and ordered Defendant to respond.  Obviously, Plaintiff did not seek

27  reconsideration of that Order.  Plaintiff's Motion was titled "Motion to Reinstate Plaintiff's

28  FTCA Claim."  (*Id.*)  More importantly, in her Motion, Plaintiff did not include the word

"reconsideration" or "reconsider," and she made no request for reconsideration of a prior decision. Rather, Plaintiff specifically sought to reinstate a claim she had previously voluntarily dismissed. *See Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 195 (3d Cir. 2008) ("[I]t is the relief desired, not the title of the motion, that dictates how this Court should view a particular filing."). Nothing within Plaintiff's Motion could reasonably be construed as a request for reconsideration.

Plaintiff's "Motion to Reinstate" was incorrectly docketed as a "Motion for Reconsideration." But upon reading Plaintiff's Motion, the error was evident, and defense counsel received a copy of the Motion with the electronic filing and is expected to have read it. The Court construes Defendant's failure to respond to Plaintiff's Motion to Reinstate as consent to granting the Motion.

Before granting Plaintiff's request to reinstate the FTCA claim, however, the Court must determine whether it has jurisdiction. The FTCA requires claimants to exhaust administrative remedies prior to bringing suit in federal court. *McNeil v. United States*, 508 U.S. 106, 107 (1993). The exhaustion requirement is jurisdictional. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). A claimant must present a claim for administrative review to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. §§ 2401(b), 2675(a). Then, if the agency denies the claim in writing or fails to make a final decision within six months, the claimant may file suit. § 2675(a).

Plaintiff attaches to her Motion the letter from the BOP confirming receipt of Administrative Claim No. TRT-WXR-2023-07624 on August 22, 2023. (Doc. 83-1.) Plaintiff alleges she received no response to this claim within the six-month deadline for BOP to respond. (Doc. 83 at 2.)

Plaintiff brought this case in federal court in June 2023, and, in the Complaint, she invoked the federal court's jurisdiction under the FTCA. (Doc. 1 at 2, 22.) But Plaintiff did not exhaust the requisite administrative remedies until February 2024—after she brought this case. The Ninth Circuit has only permitted exhaustion occurring after the filing of an initial complaint—and before the filing of an amended complaint—in cases

where the amended complaint adds new FTCA claims not raised in the initial complaint. *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) (finding FTCA exhaustion requirement was satisfied after the original complaint was filed, where the "original complaint neither named the United States as a defendant nor stated a claim under the" FTCA, and the plaintiff "only amended his complaint to name the United States and include an FTCA cause of action after the government had failed to respond to his administrative claims within six months"); *Fiorito v. Anderson*, No. 5:18-cv-00506-FWS-KES, 2022 WL 2824906, at *12 (C.D. Cal. July 19, 2022) (dismissing the plaintiff's FTCA claims in the second amended complaint because the claims were raised in the initial complaint, but the plaintiff did not exhaust the FTCA administrative remedies until after filing his initial complaint and before filing his second amended complaint).

Plaintiff was required to satisfy the FTCA exhaustion requirement prior to filing her Complaint because she raised the FTCA claim in her Complaint. Administrative Claim No. TRT-WXR-2023-07624, submitted in August 2023, did not satisfy the exhaustion requirement because BOP did not receive it until after Plaintiff's June 2023 Complaint had been filed. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's FTCA claim, and Plaintiff's Motion to Reinstate FTCA Claim will be denied without prejudice. *See Wilson v. Horton's Towing*, 906 F.3d 773, 783 (9th Cir. 2018) ("When a plaintiff fails to exhaust administrative remedies against the United States, as required by the FTCA, the proper route is dismissal."); *Strubel v. SAIF Corp.*, 848 F. App'x 745, 746 (9th Cir. 2021) ("The district court properly dismissed [the self-represented plaintiff's] action for lack of subject matter jurisdiction . . . . However, a dismissal for lack of subject matter jurisdiction should be without prejudice.").

Although it does not necessarily serve the interests of efficiency and inexpensive determination of actions, having now exhausted the administrative remedies, Plaintiff may assert the FTCA claim in a new, separate case, so long as the claim is not barred by the statute of limitations or otherwise. *See Wilson*, 906 F.3d at 783 ("a plaintiff may generally return to federal court after timely exhausting administrative remedies before the relevant

federal agency"); *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1245–46 (9th Cir. 2017) (finding the plaintiff had exhausted his administrative remedies before amending his complaint in state court and then removing the case to federal court for a second time because the second removal was not a "continuation of the federal case initiated by the first [removal]"; instead, "the second removal actually constituted a new federal case, with a new case number and a new docket in the federal district court").

## III.   Motions to Unseal Documents (Docs. 84, 129)

In her Motion to Unseal All Sealed Psychology Records and Other Sealed Documents (Doc. 84), Plaintiff asks the Court to "unseal any and all currently sealed records pertaining to her mental health files/records, as well as this Court's 03/13/24 (Doc. 81) Order."  Similarly, in Plaintiff's Motion to Unseal Documents (Doc. 129), she asks the Court to unseal her recently filed motions (Docs. 122, 124, 126) and attached psychology records.  The Court finds no basis to reconsider its decision to file Plaintiff's medical records under seal and will deny the Motion.

## IV.   Plaintiff's Second Motion for Preliminary Injunction (Doc. 85)

### A.   Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").  Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners," and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."  *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citation and internal quotation marks omitted).

A plaintiff seeking a preliminary injunction must show: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of injunctive relief;

(3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government opposes a preliminary injunction, the "third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti*, 11 F.4th at 1050.

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).

### B.    Discussion

In June 2023, Plaintiff previously moved for injunctive relief in the form of release from the SHU. (Doc. 6.) Plaintiff alleged the conditions of confinement in the SHU caused her mental deterioration, anxiety attacks, severe depression, and insomnia, and led to suicidal ideation. (Doc. 6 at 2–3.) According to Plaintiff, prisoners in the SHU are kept under bright artificial light most of the day and do not have any out-of-cell recreation or physical exercise apart from being placed in a cell-sized cage approximately three times a week. (Doc. 81 at 11.) Plaintiff also alleged there was no access to commissary or rehabilitative or educational programs in the SHU, and SHU prisoners are limited to one 15-minute telephone call per month. (*Id.* at 12, citing Doc. 1 at 6.) Plaintiff alleged despite completing 30 days in the SHU as a disciplinary sanction, she remained housed in the SHU for extended periods of time. (*Id.* at 7–8.)

The Court denied Plaintiff's request for injunctive relief, finding she had been released from disciplinary segregation and her factual allegations regarding the conditions of confinement were not specific enough or sufficient to support injunctive relief. (Doc. 81 at 10, 12.) As to Plaintiff's claim the conditions in the SHU exacerbate her mental health conditions, thereby placing her at serious risk of suicide, mental deterioration, and injury, Defendant's unrebutted evidence showed officers make SHU rounds every 30

minutes; Plaintiff was prescribed psychotropic medications and did not claim they were ineffective; Plaintiff was regularly and frequently seen by mental health providers; and Plaintiff had undergone three suicide risk assessments, two of which determined she was low acute risk and no chronic risk, and the third diagnosed Plaintiff with a moderate acute risk, but no chronic risk, and she was placed on suicide watch for 5 days. (*Id.* at 14–15.) Based on the record, the Court could not conclude prison staff had been deliberately indifferent to Plaintiff's medical and mental health needs or Plaintiff was likely to suffer irreparable injury without an injunction. (*Id.* at 16.) Plaintiff's Motion seeking release from the SHU was therefore denied without prejudice. (*Id.* at 16, 22.)

In her pending Second Motion for Preliminary Injunction, Plaintiff asks the Court to order her release from the SHU and/or enjoin Defendant from placing her in isolation units for extended periods of time. (Doc. 85 at 1.) Plaintiff alleges she was placed into the SHU in March 2023, and, although she completed her 30 days of disciplinary segregation, she was left in isolation with "Administrative Segregation" status indefinitely under the false pretense that she was going to be transferred to another institution. (*Id.* at 2.) Plaintiff states that, as of the date of her Motion—March 28, 2024—BOP has denied USP Tucson officials' requests to transfer her four times and she remains housed in the SHU arbitrarily. (*Id.* at 3.) Plaintiff alleges she has attempted suicide twice since her March 2023 placement in the SHU, and both times she reported her suicidal ideation to officers but was sprayed with chemical agents. (*Id.*) After her suicide attempt in November 2023, Plaintiff asserts officers sprayed her with large amounts of chemical agents, assaulted her, and placed her in excessively tight restraints for 22 hours. (*Id.*) She further alleges her mental health level has been raised to care level 2, and she was recently prescribed more powerful psychotropic drugs, which she states increase her suicide risk. (*Id.* at 4.)

But Plaintiff explains her case is not about medical care or due process; rather, it is about the harsh conditions of confinement in Defendant's SHUs, which, when imposed on mentally ill prisoners like Plaintiff, violates the Eighth Amendment. (*Id.* at 6 n.8.) Plaintiff alleges these conditions of confinement place her at a serious risk of harm and death by

suicide.  (*Id.* at 6.)[2]

In denying Plaintiff's first request for release from the SHU, the Court stated that, without additional factual allegations, Plaintiff could not show a likelihood of success on the merits of her conditions-of-confinement claim or a likelihood of irreparable injury absent an injunction.  (Doc. 81 at 12–13.)  In her Second Motion, Plaintiff fails to present any additional factual allegations regarding her conditions of confinement.

More importantly, since filing her Second Motion for Preliminary Injunction, Plaintiff has been transferred from USP Tucson to USP Allenwood.  (Doc. 88.)  Generally, a prisoner's transfer to a different prison while conditions-of-confinement claims are pending moot any claims for injunctive relief.  *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).  Although Plaintiff's conditions-of-confinement claim concerns Defendant's SHU policies, and is not just related to the USP Tucson SHU, to be eligible for preliminary injunctive relief, Plaintiff must allege specific facts regarding her current conditions of confinement and how those conditions impose a serious risk of harm to her.  Plaintiff has not done so here and merely relies on her allegations of past treatment at USP Tucson.  For the above reasons, Plaintiff's Second Motion for Preliminary Injunction will be denied.

## IV.    Plaintiff's Request for Entry of Default (Doc. 89)

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(a)(1)(A), a "defendant must serve an answer . . . within 21 days after being served with the summons and complaint; or . . . if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent."  If a defendant fails to plead or otherwise defend an action after being properly served with a summons and complaint, a default judgment may be entered pursuant to Federal Rule of Civil Procedure 55(a).

---

[2] Defendant did not file a response to Plaintiff's Motion.  Instead, Defendant filed a Notice stating it construed Plaintiff's Motion as one for reconsideration and therefore would not respond unless ordered to do so by the Court.  (Doc. 86.)

Rule 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  The term "otherwise defend" is generally "understood to include motions attacking service, motions to dismiss, motions for bills of particulars, or motions for summary judgment."  *Cowen v. Aurora Loan Servs.*, No. CIV 10-452-TUC-CKJ, 2010 WL 3342196, at *1 (D. Ariz. Aug. 25, 2010).

**B.    Discussion**

In its July 24, 2023 Screening Order, the Court ordered service on Defendant, and service was executed on the United States Attorney for the District of Arizona and the Attorney General of the United States on July 28 and August 4, 2023 respectively.  (Docs. 15, 19, 24.)  On September 28, 2023, the Court granted Defendant's request to extend the time to file an Answer, and the deadline for filing an Answer was set for November 7, 2023.  (Doc. 53.)  To date, Defendant has not filed an Answer.

But "the clerk must enter a defendant's default only where the defendant has not yet appeared and defended."  *Shuster v. Shuster*, No. 2:16-cv-03315-JWS, 2017 WL 20254, at *2 (D. Ariz. 2017).  Here, Defendant has appeared and defended against Plaintiff's claim; Defendant filed a Motion to Dismiss as Moot or in the alternative Motion for Summary Judgment.  (*See* Doc. 90.)  *See Cowen*, 2010 WL 3342196, at *1; *see also Harris v. McGrath*, No. CV-14-02453-TUC-CRP, 2016 WL 11652877, at *1 (D. Ariz. June 21, 2016) (a party may file a motion for summary judgment before filing an answer).  Even though Defendant's Motion was not timely filed, entry of default is not appropriate. *Morales-Alfonso v. Garcia*, No. 15-0200-TUC-JAS (LAB), 2017 WL 1650222, at *1 (D. Ariz. May 2, 2017) (denying the plaintiff's application for entry of default where the defendants filed a motion to dismiss, despite the untimeliness of the motion to dismiss); *Hudson v. North Carolina*, 158 F.R.D. 78, 80 (E.D.N.C. 1994) (Defendants' filing of a Rule 12 motion, "however late, cured their default and thereafter entry of default would not be appropriate.").  Accordingly, Plaintiff's Motion for Entry of Default will be denied. . . . .

**V.      Plaintiff's Motion to Strike Defendant's Motion to Dismiss or for Summary Judgment (Doc. 102)**

Plaintiff moves to strike Defendant's Motion to Dismiss as Moot or in the alternative Motion for Summary Judgment asserting it is untimely, her claim is not moot, and administrative remedies were not available.  (Doc. 102).

Defendant's Motion is untimely.  But there is a strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See* Fed. R. Civ. P. 1.  Here, Defendant's Motion fails on the merits, so there is no prejudice to Plaintiff in addressing the Motion.  Plaintiff's Motion to Strike Defendant's Motion will therefore be denied.

**VI.     Defendant's Motion to Dismiss as Moot (Doc. 90)**

**A.      Legal Standard**

A claim is considered moot if it is no longer a present and live controversy or if no effective relief can be granted.  *Mitchell v. Dupnik*, 75 F.3d 517, 527–28 (9th Cir. 1996).  When a question before the court has been mooted by changes in circumstances after the complaint is filed, there is no justiciable controversy.  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Questions of mootness regarding injunctions are viewed "in light of the present circumstances."  *Mitchell*, 75 F.3d at 528.  "[A] suit for injunctive relief is normally moot upon the termination of the conduct at issue . . . ."  *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004).  Thus, if a prisoner is no longer subjected to prison officials' allegedly unlawful activity, the complaint for injunctive relief becomes moot.  *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985).  A party seeking dismissal on mootness grounds bears a heavy burden.  *Coral Constr. Co. v. King County*, 941 F.2d 910, 927–28 (9th Cir. 1991); *see Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1303 (9th Cir. 2000) ("The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide.").  "[A] case is not moot where *any* effective relief may be granted."  *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006).

. . . .

**B.    Discussion**

Because Plaintiff is no longer housed in the USP Tucson SHU, Defendant argues her claim for injunctive relief under § 1331 should be dismissed as moot.  (Doc. 90 at 6.)  Defendant notes that, when she initiated this action, Plaintiff filed a combined Civil Action/Complaint/Petition pursuant to 28 U.S.C. § 2241, *Bivens*, and the FTCA.  (Doc. 108 at 5 n.5.)   According to Defendant, the Court severed the habeas petition, and Plaintiff's challenges to Defendant's policies were part of the severed habeas action, leaving Plaintiff's claim for injunctive relief based on actions by USP Tucson officers as the only claim in the instant action.  (*Id.*)  But, Defendant asserts, because Plaintiff was transferred to USP Allenwood in June 2024, her claim is now moot.  (Doc. 91 ¶ 11.)

In its Screening Order, the Court explained habeas corpus is the proper proceeding in which to challenge the legality or duration of confinement, whereas a civil rights action is the proper method for challenging the conditions of a prisoner's confinement.  (Doc. 15 at 2.)  Plaintiff's claim challenging the conditions of her confinement is addressed in the instant civil rights action, not in the severed habeas action.  Further, Plaintiff's *Bivens* claims against USP Tucson officers based on their actions were dismissed at screening.  (*Id.* at 9.)

In her Complaint, Plaintiff specifically cited Defendant's policy governing SHUs in all Defendant facilities nationwide, and she described the standard conditions in all SHUs.  (Doc. 1 ¶¶ 17–21, 25.)   Plaintiff also alleged that under Defendant's current policy, prisoners are routinely placed into SHUs "pending SIS investigation" based on arbitrary charges and justifications, a practice often resulting in lengthy SHU placements.  (*Id.* ¶¶ 27–28.)  And Plaintiff alleged the relevant BOP policy regarding SHUs is "vague" and "ill-defined," which results in the overuse of SHUs.  (*Id.* ¶¶ 27–30.)

In her Response to Defendant's Motion to Dismiss, Plaintiff states the instant civil rights action did not merely challenge the practices at USP Tucson.  (Doc. 94 at 2.)  Rather, Plaintiff asserts her Complaint challenges Defendant's SHU policies and practices and its overuse of SHU in general.  (*Id.*)  Plaintiff claims she is still affected by the BOP policies

she challenged in her Complaint. (*Id.*) Plaintiff avers that on July 30, 2024—the same day Defendant filed its Motion to Dismiss—she was placed in the SHU at USP Allenwood, purportedly due to an "SIS investigation." (Doc. 94-1 at 1, Pl. Decl. ¶ 1.) Consequently, Plaintiff avers, she is subject to the same policy imposing harsh and atypical conditions of confinement. (*Id.* ¶ 2.) The Court considers Plaintiff's Response arguments to the extent they clarify and bolster her SHU policy claim against Defendant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a pro se litigant can "bolster[ ] his claim by making more specific allegations in documents attached to the complaint and in later filings"); *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (courts are required to afford a pro se litigant "'the benefit of any doubt' in ascertaining what claims he 'raised in his compliant and *argued to the district court*'" (emphasis in *Alvarez*) (quoting *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001))).

Defendant confirms Plaintiff is currently housed in the SHU at USP Allenwood. (Doc. 108 at 3.) Thus, Plaintiff is subject to the conditions she alleged in her Complaint. More importantly, her claim for injunctive relief under § 1331 challenges Defendant's BOP policies related to placement and ongoing confinement in the SHU. "The continued and uncontested existence of the policy that gave rise to [the plaintiff's] legal challenge forecloses [the defendant's] mootness argument." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir. 2003). Thus, Plaintiff's claim for injunctive relief is not moot, and Defendant's Motion to Dismiss will be denied.

**VII.    Defendant's Motion for Summary Judgment (within Doc. 90)**

Defendant alternatively moves for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (Doc. 90 at 8.)[3]

---

[3] Upon the filing of Defendants' Motion for Summary Judgment, the Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) (en banc), which informed Plaintiff of the requirements under Federal Rule of Civil Procedure 56 and set a briefing schedule. (Doc. 93.)

1          **A.      Legal Standard**

2          A court must grant summary judgment "if the movant shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4    Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The

5    movant bears the initial responsibility of presenting the basis for its motion and identifying

6    those portions of the record, together with affidavits, if any, it believes demonstrate the

7    absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

8          If the movant fails to carry its initial burden of production, the nonmovant need not

9    produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03

10   (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden then shifts to

11   the nonmovant to demonstrate the existence of a factual dispute and the materiality of the

12   fact in contention.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).  A fact

13   is material if it might affect the outcome of the suit under the governing law.  *Id.* at 248.

14   Additionally, the nonmovant must demonstrate the dispute is genuine, i.e., the evidence is

15   such that a reasonable jury could return a verdict for the nonmovant.  *Id.*; *see Triton Energy

16   Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not

17   establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities

18   Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific

19   facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith

20   Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and internal quotation marks omitted);

21   *see* Fed. R. Civ. P. 56(c)(1).

22         At summary judgment, the judge's function is not to weigh the evidence and

23   determine the truth of the matter but to determine whether there is a genuine issue for trial.

24   *Anderson*, 477 U.S. at 249.   In its analysis, the court does not make credibility

25   determinations; it must believe the nonmovant's evidence and draw all inferences in the

26   nonmovant's favor.  *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

27   Cir. 2007).  The court need consider only the cited materials, but it may consider any other

28   materials in the record.  Fed. R. Civ. P. 56(c)(3).  Where the nonmovant is a pro se litigant,

1    the court must consider as evidence in opposition to summary judgment all of the

2    nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393

3    F.3d 918, 923 (9th Cir. 2004).

4        **B.    Exhaustion**

5            **1.    Governing Standard**

6        Under the PLRA, a prisoner must exhaust "available" administrative remedies

7    before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*,

8    449 F.3d 1047, 1050–51 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir.

9    2005). The prisoner must complete the administrative review process in accordance with

10   the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required

11   for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523–24 (2002), regardless of

12   the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S.

13   731, 741 (2001).

14       Where a defendant asserts nonexhaustion, the defendant bears the initial burden to

15   show there was an available administrative remedy and the prisoner did not exhaust it.

16   *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936–

17   37 (a defendant must demonstrate applicable relief remained available in the grievance

18   process). Once that showing is made, the burden shifts to the prisoner, who must either

19   demonstrate she did, in fact, exhaust administrative remedies or "come forward with

20   evidence showing that there is something in h[er] particular case that made the existing and

21   generally available administrative remedies effectively unavailable to h[er]." *Albino*, 747

22   F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary

23   judgment is appropriate if the undisputed evidence, viewed in the light most favorable to

24   the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

25       If summary judgment is denied, disputed factual questions relevant to exhaustion

26   should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of

27   exhaustion. *Albino*, 747 F.3d at 1170–71. But if a court finds the prisoner exhausted

28   administrative remedies, administrative remedies were not available, or the failure to

exhaust administrative remedies should be excused, the case proceeds to the merits.  *Id.* at 1171.

### 2.    BOP Administrative Remedy Process

The BOP has established a four-tiered administrative remedy program for prisoner complaints, codified at 28 C.F.R. §§ 542.10–542.19.  (Doc. 91-1 at 3, Lorri Mitchell Decl. ¶ 4.)  The first step is an attempt at informal resolution, and a request for such a resolution is submitted on an Informal Resolution Form, also known as a BP-8.  (*Id.*)  The second step is the filing of a formal Administrative Remedy Request, or a BP-9, with the Warden of the institution in which the inmate is incarcerated; the BP-9 must be filed within 20 days of the date underlying the complaint.  (*Id.*)  The third step is an appeal to the Regional Director via a Regional Office Administrative Remedy Appeal, or a BP-10.  (*Id.*)  The final step is an appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C., via a Central Office Administrative Remedy Appeal, or a BP-11.  (*Id.*)  The Administrative Remedy Coordinator at any level may reject a Request or Appeal if it does not meet the requirements set out in the Code of Federal Regulations.  (*Id.*)  If a Request or Appeal is rejected, written notice must be provided to the prisoner explaining the reason for the rejection.  28 C.F.R. § 542.17(b).

The BOP maintains information related to prisoner administrative remedy complaints in a national database called SENTRY.  (Doc. 91-1 at 3, Mitchell Decl. ¶ 6.)  Each formal complaint—the BP-9, BP-10, and BP-11—is logged into SENTRY at the receiving location and assigned a Remedy ID Number as well as an "extension" code identifying the filing as either a BP-9, BP-10, or BP-11.  (*Id.* at 4, ¶ 7.)

Prisoners have access to the Code of Federal Regulations and Bureau Program Statements, including the *Administrative Remedy Program*, through the institution law library and the Electronic Law Library.  (*Id.* at 4, ¶ 8.)

### 3.    Parties' Contentions

In her Complaint, Plaintiff avers she repeatedly requested BP-8 and BP-9 forms from numerous BOP officers at USP Tucson, but officers told her they do not distribute

BP-8 and BP-9 forms because that is "a unit team issue." (Doc. 1 ¶ 57.)  Plaintiff avers she requested BP-8 and BP-9 forms from numerous USP Tucson Unit Team staff, including Counselor Flores, Counselor Villareal, and Case Manager Kendryna. (*Id.*) Plaintiff avers they all responded they were not allowed to give Plaintiff forms because they were not part of Plaintiff's Unit Team. (*Id.*)  Plaintiff avers that, beginning in March 2023, she repeatedly requested BP-8 and BP-9 forms from the members of her Unit Team, including Case Manager Mack, but was only ever able to obtain one BP-8 form from Mack for an issue related to Plaintiff's medication. (*Id.*)  According to Plaintiff, whenever she requested a BP-8 or BP-9 form to address the SHU policy, conditions of confinement, and other related issues, Mack repeatedly declined to provide the forms or stated she would "bring one next time" but never did. (*Id.*)  Plaintiff further avers Mack misrepresented BOP rules to Plaintiff, stating Plaintiff could not file a BP-9 on certain issues and refused to provide the necessary forms. (*Id.*)  Finally, Plaintiff avers that in one rare instance, Correctional Counselor Wright provided her a BP-8 form, which Plaintiff used to complain about "the deliberate manipulation by staff of the SHU and disciplinary process which results in the overuse of the SHU unnecessarily and Plaintiff being held in SHU for extended periods of time." (*Id.* ¶ 60.)  Plaintiff explains she received no response to this BP-8 and was not provided with a BP-9 form to proceed with a formal complaint. (*Id.*) Plaintiff argues she was thwarted by prison officials from exhausting administrative remedies. (*Id.* ¶ 59.)

Plaintiff attaches to her Complaint the declaration of prisoner Robert Velez, who was Plaintiff's cellmate from May 2023 until Plaintiff filed her Complaint. (Doc. 1-1 at 23, Velez Decl. ¶ 2.)  Velez avers he observed Plaintiff make multiple requests for BP-8 and BP-9 forms to BOP officers and other Unit Team staff, including Mack and Kendryna. (*Id.* ¶ 3.)  Velez avers Plaintiff was not given forms, and Mack would often say, "I will bring you one next week," but never did. (*Id.*)  Velez avers Counselor Wright would only make rounds about once a month, even though a BP-8 form must be filed within 20 days of the underlying incident. (*Id.*)

In its Motion for Summary Judgment, Defendant argues Plaintiff's claim for injunctive relief enjoining her confinement in the SHU has not been properly and fully exhausted as required under the PLRA. (Doc. 90 at 5.)  In support of its Motion, Defendant submits the declaration of Lorri Mitchell, legal assistant at USP Tucson, who avers prisoners at USP Tucson can obtain administrative remedy forms from any Unit Team member, including Unit Managers, Case Managers, Correctional Counselors, and Unit Secretaries. (Doc. 91-1 at 2, 5, Mitchell Decl. ¶¶ 1, 10.)  Defendant submits SENTRY printouts showing Plaintiff filed just three Administrative Remedies Requests while at USP Tucson, but none of these three Requests related to SHU placement or conditions. (Doc. 91-1 at 50–51.)  Mitchell avers Plaintiff did not file a BP-10 or BP-11 regarding any subject matter. (Doc. 91-1 at 8, Mitchell Decl. ¶ 24.)  Defendant also submits the declaration of Case Manager Michael Mack, who avers she was part of Plaintiff's Unit Team staff and Plaintiff was a prisoner on her case load at USP Tucson. (Doc. 91-2 at 2, Mack Decl. ¶¶ 1–2.)  The remainder of Mack's declaration addresses the reasons for Plaintiff's transfer out of USP Tucson. (*Id.* at 2–3, ¶¶ 4–8.)

In her Response to Defendant's Motion, Plaintiff points out Defendant failed to respond to, and thus failed to refute, the detailed factual allegations in her Complaint regarding the denial of BP-8 and BP-9 forms from BOP officers, her Unit Team, and Case Manager Mack. (Doc. 94 at 4.)  Plaintiff notes neither Mitchell's nor Mack's declaration contests Plaintiff's sworn statements regarding her numerous attempts to exhaust and the denial of grievance forms. (*Id.* at 5.)  In her attached declaration, Plaintiff avers that, while it was easy to obtain BP-10 forms to appeal disciplinary sanctions from the Unit Team staff, the Unit Team staff was unwilling to provide the BP-8 and BP-9 forms necessary to initiate the administrative remedy process. (Doc. 94-1 at 4, Pl. Decl. ¶ 8.)  In support of her opposition, Plaintiff submits the declaration of prisoner Lance Vonnortwick, who avers that, while housed in the SHU at USP Tucson from February through May 2024, Mack was his Case Manager and refused to provide BP-8 and BP-9 forms when Vonnortwick

sought to raise issues related to placement in the SHU.  (Doc. 94-1 at 7–8, Vonnortwick Decl. ¶¶ 1–2.)

As to the three administrative remedy requests Plaintiff filed while at USP Tucson, Plaintiff explains she was only able to file those because she purchased the BP-9 forms from other prisoners who were able to obtain forms from their Unit Team staff.  (Doc. 94 at 6; Doc. 95 at 7; Doc. 94-1 at 3, Pl. Decl. ¶ 6.)  Plaintiff states each form cost her around $50 or 4 to 5 books of stamps.  (Doc. 95-1 at 3–4, Pl. Decl. ¶¶ 5–6.)  Plaintiff avers she wrote on the top of each of these submitted forms that she had to buy the form from other prisoners because her Unit Team staff was refusing to provide her such forms.  (*Id.*)  Plaintiff maintains the record and the unrefuted allegations in her Complaint support her claim that administrative remedies were unavailable to her.  (Doc. 94 at 4–6.)

In its Reply, Defendant argues for the first time that, under the relevant policy, "while any Unit Team member *may* provide an inmate an administrative remedy form, the primary responsibility lies with the Counselor."  (Doc. 108 at 7 (emphasis in Reply).)  Defendant states Correctional Counselor Wright was therefore the individual responsible for providing Plaintiff with forms, and Plaintiff did not specifically allege she had asked Wright for a form and he refused to provide her one.  (*Id.*)

Defendant further argues Plaintiff's claims regarding the unavailability of forms is contradictory because, although she argues BP-10 forms are easy to obtain, she fails to explain why she submitted two of the three BP-9 forms at the region level instead of BP-10 forms, which are required when submitting requests to the Regional Director.  (Doc. 108 at 8.)  And Defendant notes Plaintiff does not explain why she did not use the BP-9 forms she was able to obtain to begin the administrative remedy process as to the claim in her Complaint.  (*Id.* at 8–9.)

With its Reply, Defendant submits another declaration from Case Manager Mack and a declaration from Counselor Wright responding to the specific allegations in Plaintiff's Complaint regarding the denial of BP-8 and BP-9 forms.  (Docs. 108-1, 108-2.) . . . .

In her Reply declaration, Mack describes the BOP Administrative Remedy process and avers she "would not deny access to Administrative Remedy forms"; does not routinely carry forms with her; and "would not deliberately frustrate the Plaintiff, and her access to the Administrative Remedy program, by continually responding to her requests for Administrative Remedy forms by stating 'I don't have one with me right now.  I'll bring you one next time' and never doing so." (Doc. 108-1 at 3–4, 5–6, Mack Decl. ¶¶ 6–11, 17, 19, 20, 22.)  Mack also avers she does not recall an occasion when Plaintiff asked her for a form and Mack denied access to the form.  (*Id.* ¶ 21.)

In his Reply declaration, Wright describes the BOP Administrative Remedy process and avers he does not recall Plaintiff asking for Administrative Remedy forms except for one time in April 2023 for a medical issue; he routinely conducted rounds in SHU, generally on Mondays; "[i]f requested, [he] would not have denied the Plaintiff an Administrative Remedy form"; and he has "never denied any inmate, including Plaintiff, an Administrative Remedy form." (Doc. 108-2 at 3–4, 6–8, Wright Decl. ¶¶ 6–11, 19–22, 24.)

### 4.    Reply Declaration Evidence

The Court need not consider evidence submitted for the first time in a reply.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (Where "new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." (alteration in *Provenz*) (citation omitted)).  "It is well established that new arguments and evidence presented for the first time in [r]eply are waived."  *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (striking supplemental declarations on reply where the "declarations address issues which should have been addressed in the opening brief, and the new evidence is inappropriate for Reply"); *see Wallace v. Countrywide Home Loans, Inc.*, No. SACV 08-1463 AG MLGX, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009) ("A district court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief.").

A court may consider evidence submitted for the first time with a reply if it is responsive to points raised for the first time in the nonmovant's opposition. *E.E.O.C. v. Creative Networks, LLC and Res-Care, Inc.*, No. CV-05-3032-PHX-SMM, 2008 WL 5225807, at *2 (D. Ariz. Dec. 15, 2008) (because new exhibits attached to the defendant's reply rebutted arguments first raised by the plaintiff in its opposition to the summary judgment motion, the court could consider the exhibits); *see Bell v. Santa Ana City Jail*, No. SA CV 07-1218-ODW, 2010 WL 582543, at *1 n. 3 (C.D. Cal. Feb. 16, 2010) ("The Court concurs with defendant . . . that the evidence adduced in her Reply raises no new issues and consists solely of a response to the arguments that plaintiff first raised in his Opposition."). Evidence submitted with a reply "is not 'new'" and may be considered "if it is submitted in direct response to proof adduced in opposition to a motion." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007).

The declarations submitted with Defendant United States' Reply are not in response to arguments or evidence Plaintiff raised for the first time in her opposition to Defendant's Motion for Summary Judgment. Rather, the Reply declarations are in response to the exhaustion argument and evidence (sworn statements) presented in Plaintiff's Complaint. (*See* Doc. 1.) Indeed, in their Reply declarations, Mack and Wright cite the specific allegations within Plaintiff's Complaint to which they are responding. (Doc. 108-1 at 5, Mack Decl. ¶¶ 14–16; Doc. 108-2 at 5, Wright Decl. ¶¶ 15–16.) The Reply declarations address issues that should have been addressed in the Motion for Summary Judgment; thus, the new evidence is inappropriate.[4] There is no reason Defendant could not have included

---

[4] Further, Mack's and Wright's statements that they cannot recall certain events, and their averments as to what they would or would not have done in a certain situation, are not sufficient. A failure to recall information, like having a belief in factual information, is insufficient because it does not show personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) (sworn statement used to support summary judgment motion must be made on personal knowledge); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412–13 (9th Cir. 1995) (declarations on information and belief are entitled to no weight where declarant lacks personal knowledge). Also, an official's speculation as to what she would or would not have done is subject to a credibility dispute. *See Anderson*, 477 U.S. at 249–50. Such a statement is otherwise insufficient because "affidavits in support of a motion for summary judgment require more than a prison officer's pledge of good intentions; such affidavits must demonstrate personal knowledge of the events to preclude a finding that material

1    Mack's and Wright's Reply declarations with the Motion for Summary Judgment, and the
2    Court will not give Defendant a "second bite at the apple on reply," particularly where, as
3    here, Defendant—who is represented by the U.S. Attorney's Office—is litigating against
4    a pro se prisoner litigant.  *Cal. Expanded Metal Prods. Co. v. Klein*, 426 F. Supp. 3d 730,
5    743 (W.D. Wash. 2019) (striking the defendant's supplemental declaration and all portions
6    of the reply brief relying on that declaration because the supplemental declaration included,
7    for the first time, specific factual allegations the defendant could have included "in his
8    sparsely supported first declaration").  Accordingly, in its analysis, the Court will not
9    consider the Reply declarations or those portions of the Reply brief relying on those
10    declarations.

11                    **5.        Analysis**

12          Exhaustion is not required when circumstances render administrative remedies
13    "effectively unavailable."  *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).  The
14    Supreme Court has explained remedies are unavailable "when prison administrators thwart
15    inmates from taking advantage of a grievance process through machination,
16    misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).  Specifically,
17    a prisoner is excused from the exhaustion requirement where she does not have access to
18    the necessary grievance forms.  *See Albino*, 747 F.3d at 1173 (noting a remedy may be
19    unavailable if the prisoner "did not have access to the necessary grievance forms within
20    the prison's time limits for filing a grievance"); *see Marella v. Terhune*, 568 F.3d 1024,
21    1027–28 (9th Cir. 2009) (per curiam) (finding the district court erred in concluding there
22    were no exceptions to the timely filing requirement because there were no factual findings
23    as to whether the prisoner had access to the necessary forms); *see also McBride v. Lopez*,
24    807 F.3d 982, 984 (9th Cir. 2015) (noting the exhaustion requirement may be excused
25    where intervening actions or conduct by prison officials render the grievance procedure

26    _____

27    issues of fact exist with respect to the claim."  *Aguilar v. Kuloloia*, No. 2:06-CV-01002-
      KJD-PAL, 2007 WL 2891503, at *9 (D. Nev. Sept. 28, 2007).

28

                                         - 24 -

1    unavailable).

2        Plaintiff presents sworn statements averring she repeatedly requested BP-8 and BP-

3    9 forms from "members of her Unit Team," including Case Manager Mack, but her Unit

4    Team staff repeatedly refused to provide her with forms.  (Doc. 1 ¶ 57.)  Defendant fails to

5    refute Plaintiff's statements or address the availability of administrative remedy forms at

6    USP Tucson, except to generally assert prisoners may obtain the appropriate forms "from

7    their Correctional Counselor or any Unit Team Member."  (Doc. 90 at 12.)  Defendant's

8    general assertion that prisoners could obtain administrative remedy forms from any Unit

9    Team member is insufficient to overcome Plaintiff's specific allegations that her Unit

10   Team members repeatedly denied her requests for forms.  *See Garcia v. Folks*, No. 2:14-

11   cv-2378 JAM DB P, 2019 WL 1452904, at *7 (E.D. Cal. April 2, 2019) ("Defendants may

12   not simply rely on the fact that the prison had a system in place to provide ad seg inmates

13   with appeal forms to overcome plaintiff's showing that he was unable to obtain one.").

14       Defendant also fails to refute Plaintiff's claim she wrote on the top of the only three

15   BP-9 forms she submitted at USP Tucson that she had to purchase the administrative

16   remedy forms from other prisoners because her Unit Team staff members refused to

17   provide them to her.  (Doc. 95-1 at 3, Pl. Decl. ¶ 6.)  Defendant could have, but fails to,

18   provide the actual BP-9 forms Plaintiff submitted, which would confirm or disprove

19   Plaintiff's claim.

20       Nor does Defendant explain what options were available to Plaintiff if a member of

21   her Unit Team staff denied a request for an administrative remedy form.  *See Brown*, 422

22   F.3d at 936–37 (evidence showing remedies are available include official directives and

23   information provided to the prisoner concerning the grievance procedure operation, and

24   this information "is pertinent because it informs our determination of whether relief was,

25   as a practical matter, available" (internal quotation marks and citation omitted)).  Plaintiff

26   avers she attempted to obtain BP-8 and BP-9 forms from other officers and members of

27   other Unit Teams, but her requests for forms were denied.  Plaintiff names at least three of

28   the officers from whom she requested forms, yet Defendant fails to present any sworn

statements from those officers refuting Plaintiff's averment.  (*See* Doc. 1 ¶¶ 57–58.)

As mentioned above, a BP-9 is submitted to the Warden at the institutional level, and the BP-10 is submitted to the Regional Director at the region level.  Defendant argues Plaintiff's claims that forms were unavailable is contradictory because she submitted two BP-9 forms (which she had to purchase from other prisoners) at the region level; yet the region level requires BP-10 forms, which were purportedly easy to obtain.  Defendant appears to imply that, based on Plaintiff's allegations, she should have been able to easily file a BP-10 form at the region level, but she failed to do so.  But the administrative remedy process requires a prisoner to file a BP-8 and BP-9 before filing a BP-10, so Plaintiff could not have started the process by filing a BP-10 form.   Further, under 28 C.F.R. § 542.14(d)(1), a BP-9 form may be submitted directly to the region if the prisoner reasonably believes the issue is sensitive and the prisoner's safety or well-being would be placed in danger if the administrative remedy request became known at the institution.  If exercising this option, the prisoner must mark the request as "sensitive" on the BP-9 form and explain, in writing, the reason for not submitting the BP-9 form at the institution.  *Id.* A review of the SENTRY printout proffered by Defendant shows the two BP-9 forms Plaintiff submitted at the region level included a "staff complaint" and a complaint described in SENTRY only as "Abstract:  April 2023 I was celled with a transgender [redacted]."  (Doc. 91-1 at 50–51.)  No other information is available on the SENTRY printout regarding the issues raised in these two requests.  (*See id.*)  Because the actual BP-9 forms Plaintiff filed were not submitted to this Court, it is unknown whether her requests were, in fact, marked "sensitive" and whether she was using the option available under § 542.14(d)(1) to file BP-9 forms directly at the region level.

Regardless, the fact Plaintiff was able to obtain BP-10 forms does not preclude a claim she was denied BP-8 and BP-9 forms, which must be filed before proceeding to the BP-10 and BP-11 levels.  Indeed, the third BP-9 form Plaintiff filed—at the institution level—was a request for her prescription eyeglasses to be returned, but the request was rejected because, as noted in SENTRY, it "needs BP-8 attached to BP-9." (Doc. 91-1 at

50.)  Again, Plaintiff wrote on the BP-9 form that her Unit Team staff was refusing to give her administrative remedy forms.  (Doc. 94-1 at 3, Pl. Decl. ¶ 6.)  This further supports that BP-8 forms were not available to Plaintiff.

Finally, the fact Plaintiff was able to purchase three BP-9 forms but used those forms to file complaints about her eyeglasses, a staff member, and a cellmate issue, rather than her claim underlying this lawsuit, does not overcome evidence that administrative remedies were unavailable to Plaintiff to grieve the issue in her Complaint.  Defendant does not refute Plaintiff's evidence indicating requests for administrative remedy forms were denied when Plaintiff and other prisoners sought to grieve issues related to the SHU.  (*See* Doc. 1 ¶ 57; Doc. 94-1 at 7–8, Vonnortwick Decl. ¶¶ 1–2.)  *See Williams v. Paramo*, 775 F.3d 1182, 1192 (9th Cir. 2015) ("permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear").

In light of Plaintiff's unrebutted evidence showing her specific requests for BP-8 and BP-9 forms were repeatedly denied by her Unit Team members, and absent evidence she had any alternative means of obtaining the necessary forms, Defendant fails to meet its burden to show remedies were available to Plaintiff to exhaust her claim in this action. Defendant's Motion for Summary Judgment for failure to exhaust administrative remedies will be denied.

### 6.    Sua Sponte Grant of Summary Judgment

In *Albino*, the Ninth Circuit held when a defendant moves for summary judgment based on failure to exhaust under the PLRA and has failed to show a genuine dispute of fact on the issue of exhaustion, it is appropriate for the court to sua sponte grant summary judgment for the nonmovant on the issue.  747 F.3d at 1176.  Before doing so, the Court must assure the original movant had adequate notice that the sufficiency of its claim would be at issue and had adequate time and opportunity to develop the facts and show that a genuine issue exists or the opponent is not entitled to summary judgment as a matter of

1    law. *Id.* at 1176–77.

2        As the movant, Defendant was on notice of the need to come forward with all of its

3    evidence to support its Motion, and, because success on the Motion would dispose of the

4    § 1331 claim for injunctive relief against it, Defendant had every incentive to do so.

5    Defendant had ample opportunity to provide evidence; indeed, most of the relevant

6    evidence was in its control. *See id.*  Thus, Defendant United States had a "full and fair

7    opportunity to ventilate the issues." *Id.* at 1177 (citation omitted).

8        Even so, Defendant fails to show the absence of a genuine dispute as to whether

9    administrative remedies were available for Plaintiff to grieve her complaint about SHU

10   policies.  Plaintiff has demonstrated, in her particular case, prison officials improperly and

11   repeatedly denied administrative remedy forms to her and remedies were unavailable. *See*

12   *id.* at 1172.  There is no genuine dispute regarding these facts.  Summary judgment will

13   therefore be granted to Plaintiff on the issue of exhaustion.

14   **VIII.  Plaintiff's Motion for Leave to File Amended Complaint (Doc. 120)**

15       Plaintiff seeks leave to file an amended complaint to cure any deficiency if the Court

16   grants Defendant's Motion to Dismiss as Moot.  (Doc. 120.)  As set forth above, Plaintiff's

17   claim is not moot, and Defendant's Motion to Dismiss will be denied.  Plaintiff's request

18   for leave to file an amended complaint is therefore moot.

19       Moreover, Plaintiff failed to comply with Local Rule of Civil Procedure 15.1(a),

20   which requires a party who moves for leave to amend to attach a copy of the proposed

21   amended pleading as an exhibit to the motion and indicate how the proposed amended

22   pleading differs from the original.  For these reasons, Plaintiff's Motion for Leave to File

23   Amended Complaint will be denied.

24   **IX.    Plaintiff's    Sealed    Motion    for    Leave    to    File    Recently    Discovered**

25   **Evidence/Documents (Doc. 124)**

26       Plaintiff seeks leave to submit recently discovered evidence in support of her

27   opposition to Defendant's Motion for Summary Judgment for failure to exhaust

28   administrative remedies.  The evidence Plaintiff seeks to file is a BOP document including

an excerpt of an email Plaintiff sent the BOP Transgender Executive Committee, in which Plaintiff indicated her repeated requests for BP-8 and BP-9 forms had been ignored or denied. (Doc. 124-1 at 1–6.)

The Court has already determined Defendant failed to carry its burden on the issue of exhaustion, Plaintiff demonstrated remedies were unavailable, and summary judgment on exhaustion will be granted in favor of Plaintiff. Plaintiff's additional evidence is therefore unnecessary, and her request to file the recently discovered document will be denied as moot.

## X. Plaintiff's Sealed Motion to Compel or Strike or for Appointment of Counsel (Doc. 126)

Plaintiff asks the Court to compel Defendant to provide her with a copy of the sealed documents referenced in Defendant's Motion for Leave to File Redacted Reply (Doc. 103) in support of its Motion to Dismiss or for Summary Judgment. Alternatively, Plaintiff asks the Court to strike the sealed documents or appoint counsel for Plaintiff.

Because Defendant's Motion to Dismiss or for Summary Judgment (Doc. 90) is denied, Plaintiff's Motion will be denied as moot.

**IT IS ORDERED:**

(1)    Plaintiff's Motion to Reinstate Federal Tort Claims Act (FTCA) Claim (Doc. 83) is **denied**.

(2)    Plaintiff's Motion to Unseal All Psychology Records and Other Sealed Documents (Doc. 84) is **denied**.

(3)    Plaintiff's Second Motion for Preliminary Injunction (Doc. 85) is **denied**.

(4)    Plaintiff's Request for Entry of Default (Doc. 89) is **denied**.

(5)    Plaintiff's Motion to Strike Defendant's Motion at Doc. 90 (Doc. 102) is **denied**.

(6)    Defendant's Motion to Dismiss as Moot or in the alternative Motion for Summary Judgment based on the failure to exhaust administrative remedies (Doc. 90) is **denied**.

(7)    Summary judgment on the issue of exhaustion is **granted** in favor of Plaintiff as to her § 1331 claim for injunctive relief against Defendant.

(8)    Plaintiff's Motion for Leave to File Amended Complaint (Doc. 120) is **denied**.

(9)    Plaintiff's Sealed Motion for Leave to File Recently Discovered Evidence (Doc. 124) is **denied as moot**.

(10)    Plaintiff's Sealed Motion to Compel or Strike or in the alternative Motion for Appointment of Counsel (Doc. 126) is **denied as moot**.

(11)    Plaintiff's Motion to Unseal Documents 122, 124, and 126 (Doc. 129) is **denied**.

(12)    **Within 5 days** from the date of this Order, Defendant must file an Answer to Plaintiff's Complaint (Doc. 1).

Dated this 22nd day of November, 2024.

Honorable Scott H. Rash
United States District Judge